Good morning, Your Honor, and may it please the Court, I'm Barry Bretschneider, attorney for Appellant MUMURA, working at Council Table as Mr. Adam Kessler of my firm. What we want the Court to do here is to revise the decision of the Board of Patent Appeals and Interferences to eliminate the portion of the judgment below that enters judgment as to the count against OMURA. The reason for this is because OMURA should not be confronted in subsequent cases involving the family of applications to which OMURA's patent belongs with the situation where the count is treated by the Patent Trademark Office as being the prior invention of another. What happened in this case... MUMURA Wasn't the count identical to one of the claims? BRETSCHNEIDER The count was identical to one of Shafer's claims and one of OMURA's claims, which is slightly different. Claim 23 in each case, Your Honor. MUMURA Right. Well, since the count is identical to the claims, and on page 168 of the appendix, OMURA admits that its involved claims 21 to 24 are unpatentable under 112, first paragraph, as lacking written description and support. OMURA admits further that Shafer's Motion 1 raises a threshold issue. Accordingly, the Board should grant Shafer's Motion 1. Well, when you go back to Shafer's Motion 1, it's asking for judgment. So you conceded that the Board should grant Shafer's Motion 1, and Shafer's Motion 1, the substantive motion, is a request for judgment. So, I guess my question is, are you saying the Board should have dismissed, or are you acknowledging that they should have granted judgment but should have done so only on the basis of the claims and not the count? Is that your argument? BRETSCHNEIDER The latter is correct, Your Honor, and that's exactly the case. MUMURA Well, given that you've admitted that the claim that is identical word-to-word for your count is unpatentable subject matter and judgment should be granted against it, it's kind of difficult for me to appreciate why the Board committed some sort of fatal error in granting judgment on the count. BRETSCHNEIDER Well, here's the problem, Your Honor. In the context of written description, what the Board would be deciding is that there was no basis in the originally filed patent application for the claim to appear there in the first place. And in the Board's rules, Rule 201, for example, lack of written description is tagged as a threshold issue, which goes to whether a party has standing. This type of threshold issue is to be decided, generally speaking, as the Court pointed out in the Berman v. Housey case, before any determination on the merits of priority. Interferences are primarily priority contests. MUMURA But Rule 127 allows for judgment to be entered on the basis of priority or, alternatively, on the basis of unpatentability. And clearly, that's what you agree these claims of your patent fall under. BRETSCHNEIDER But here's the problem, though, Your Honor, is that in the particular situation we have here, yes, the count is identical to one of Omura's claims, granted. But the count does not have to be identical to anybody's claims. This is so-called phantom count practice. And the point is that conceding that our claim, 23, which happens to be identical to the count, is unpatentable to Omura, is not a concession that claim 23, as reflected in the count, is the prior invention of Schaefer. The whole point is, with a written description situation— MUMURA I didn't decide that, but the PTO didn't make the decision, as far as I can tell, that priority should go to Schaefer. BRETSCHNEIDER Here's the problem, Your Honor. The way that the judgment is worded is the same wording as is used in the judgment on priority. And if you look at the cases collected in the appendix, starting at Appendix 1000, you will see where the Board has entered judgment finding lack of written description. And in some cases has entered judgment as to the count, and in other cases has entered judgment not as to the count. For example, the very first case, the very first case, the Chu versus Mukherjee at Appendix 1001, you will see that it is ordered that Mukherjee's claims do not comply with the written description. Mukherjee is not entitled to a patent containing these claims. It's ordered that this is a final decision which is appealable. There is nothing in here about judgment as to the count. You go later in the appendix, and to be fair, and this is part of the problem, the Board, in identical circumstances from what we can tell, entered a judgment as to the count against people whose claims lacked written description. So we're left with a quandary. First of all, what's the rhyme or reason to the Board's decision-making here? In other words, isn't this a classic example of something that's arbitrary and capricious? Now on Appendix A0014, I'm sorry, 0013. Counsel, though, I'm sorry, but you referred us to A1001. Yeah. And it says further, ordered entry of this judgment constitutes a final decision. Yes. What makes you assume this is not a judgment on the count? There's only... There's no statement as to judgment on the count, Your Honor. The whole point is, in this proceeding and in several others that we have pointed out to the Board and to the Court, the Board did not enter judgment as to the count. But you can't... they clearly entered judgment here. Whether or not these claims corresponded exactly with the count, we don't know and you haven't represented to us either way. No. And they've entered judgment. I'm not sure it's fair to conclude that this is not a judgment on the count at all. Why isn't this a judgment on the count? The claims that were raised have been rendered unpatentable. The reason is, as going back to the fundamental point, the reason is that the judgment as to the count is a judgment that the count represents the prior invention of another. I know counsel for Schafer will argue that's not so. And the Board seems to have said on Appendix A-0014, that's not so. But the problem is here that it is so. And if you look at these decisions, the Board... the problem here is, what's the subsequent effect of this decision? That's what you're here for, right? Yes. You're concerned about the downstream consequences. You don't want to be put in a position, as I understand your... that is stated here, is it? You don't want to be put in a position that you will be foreclosed from something you think you're entitled to do and would be free to do if the language were changed from count to claim. That is correct, Your Honor. Now, what is it that... about this case that decides the ultimate estoppel effect in your view? What is it about the decision in this case that forecloses you from making the argument that you're making now when it comes up in a later proceeding, if it should? Well, it may be that we shouldn't have requested rehearing, Your Honor, but on page 0014 of the appendix, starting at line three, the Board says, and this is in response to an argument from Omora that the Board's decision has the effect of finding priority of invention against Omora on an invention Omora didn't even make. Lastly, to the extent that Omora is asking the Board now to limit the effects of estoppel in this case, we decline to do so. Based on the facts of this case, blah, blah, blah, blah, blah, thus judgment under Rule 27b-3 was appropriate and Omora is bound by the estoppel provisions of Board Rule 127a. Right. But that just is the way I would read that, I would suppose, is that it is bound by the estoppel provisions to the extent that they apply. I mean, that leaves it open later, it would seem to me, for the Board to say that given the facts of your case, the estoppel provision does not apply in the way that you are concerned that it might. Well, I'm afraid that in this particular case, we actually have some indication. As the Court will note, we have identified other related cases, one of which is an interference presently pending in the Patent and Trademark Office No. 105753. That case has stayed pending the decision of the Court in this case. In that case, the Board proposed to hold that Omora was not entitled to certain other claims in Omora's patents because those claims of Omora were unpatentable over the count, which is exactly the consequence that happens when judgment is entered as to the count on the basis of priority of invention. If Omora did not have standing in the interference before the Court now, which Omora suggests is clearly the case, then judgment as to the count should not have had such an estoppel effect. Omora would be happy to supplement the record to demonstrate this to the Court if necessary. This is not an academic point, Your Honor. We also have the situation where given the nature of the Board's practice on entry of adverse judgment, the Board didn't even get to this point. They just said, adverse judgment, you lose. Adverse judgments are opaque in the sense that if judgment is entered as to the count and the Board never actually decided, shape or motion one, it didn't. It just said, this is a request for adverse judgment. Let me brief very thoroughly why we believe that the Board was legally and factually wrong in that case under Administrative Procedure Act standards. The Board didn't, the PTO can argue downstream, the Board never decided you had lack of standing. The Board instead entered adverse judgment against you. Adverse judgment under Rule 127B is construed consistently by the Patent and Trademark Office as being... Mr. Bishop, when you look at what happened here, wouldn't one have to concede that it was based on a lack of standing? And in the rehearing decision, the Board says, we agree that Moore has not conceded priority of invention. Well, I understand that, Your Honor, but given what happened in the downstream case relating to the very same patent with the very same judge rendering the decision, I read that and I wish I could trust that. I'm afraid that what we have here is a situation where judgments are construed for what the judgments say. This is not being treated as an issue of collateral estoppel by the Patent and Trademark Office. And if you look at Rule 127A and its recitation of the preclusive effect of the judgment, we have a problem here where the judgment is opaque, judgment was entered as to the count. All we're asking the court to do is to tell the Board, don't enter judgment as to the count. The Board has been comfortable in cases like this, Your Honor, in the past, where there was lack of standing for no written description. A1003, I think... Is there any indication as to why the Board does it different ways? I mean, I know you provide us in the appendix with different rulings, but is there any indication as to why the Board does it one way in one case, another way in another? I think the legal answer to that, Your Honor, beats me. I really don't know. And this is the problem. When you have an administrative agency which is supposed to render articulated decisions on an administrative record, going one way in one situation and another way in a situation that is factually indistinguishable, I think that that's called arbitrary and capricious under the administrative procedure. Well, it might be if we were confident that the two different routes had substantially different consequences downstream. Now, you say there's this extra record proceeding that gives you some concern that the Board may attach that kind of significance to this, and that may end up being used against you by virtue of the difference between the use of the term claim and count. But I'm having a hard time seeing that that's clearly what the Board envisions. Well, the problem is that as a practical matter, entering judgment as to the count is exactly that. You'll hear the opposite. But the problem is that I'm afraid this derives from considerable experience in the matter, Your Honor. The point is that the form of the judgment is the same judgment rendered in situations where judgment as to priority is rendered. The Board never said, You're wrong, Mr. Bretschneider. That's not what this is. Or they never reformed the judgment to make this clear. So what we have is a situation where downstream, the Board's judgment is being given an effect that is unintended and not within the scope of the Board's authority in this case. I'm kind of running out of time. But, of course, the Court is the judge of that. So if there aren't any more questions. Well, I think you've covered the essential points of your case. Have you not? Yes, thank you. Very well. Well, I think we'll reserve the rest of your rebuttal time to give you a little more because we've asked you a lot of questions. Thank you. Thank you. Mr. Glitzenstein. Good morning, Your Honors. May it so please the Court. The issue here, Your Honors, is that what Amor is actually asking for is an extraordinary and, from our review of the authorities, really unprecedented request here to reform what is essentially a full judgment into something that I think can best be characterized as partial judgment. A judgment has an effect. It has an effect as prescribed by Rule 127A. It has an effect as prescribed by this Court's authority in cases such as Dechler and Crokland. What they're asking this Court to do is sort of proactively narrow the estoppel effect of the judgment that has been entered by the Board in this case. Mr. Glitzenstein, let me ask you. We have the judgment that was entered in this case, and then we have the judgments in other cases that are example. For example, Mr. Ferschneider referred us to the one at A1000-1001, the Chu case. What is the difference, in your view, between the estoppel that arises from the judgment in Chu and the estoppel that arises from the judgment in this case? None, Your Honor. A judgment is a judgment in our view. Really, 127A is actually very clear on what the estoppel consequences are. When a party loses an interference, they are estopped, as set out in the rule and in the case law. Well, if that's the case, then why don't you allow an amended judgment? If you think estoppel is going to bar them, whether there's a judgment on the claims, then you should have no objection to us modifying the judgment as Mr. Brett Schneider has requested. Here, Your Honor, the difference is that the issue of what the proper phrasing and scope of the judgment is has been joined below and considered by the Board and resolved in a way that is in no way arbitrary or capricious against OMURO. There's nothing in the record to suggest that, for example, in the Chu and Mukherjee interference, that the issue that really is being presented on this appeal was even under consideration. So they're simply searching through different interference results for different phrasings of the judgment and then attaching to that some significance in terms of the estoppel scope of the judgment. Well, are you saying that there's no significance to the choice of either the word count or claim? Well, there is, Your Honor, yes. I mean, here the Board was confronted with this very question and very carefully noted that judgments and interferences are entered pursuant to Rule 127A. They said that really is the only way to, quote-unquote, terminate an interference, and the estoppel consequences of that are set out, and they wanted to actually make clear the very issue that Mr. Brett Schneider was pointing to, namely that this will have downstream consequences. Going back to the Chu interference, their judgment was entered pursuant to 127, and they had an apparently written description problem, as was the case here, and there was judgment as to the claims, I think. Well, part of the order went to the claim. That's correct, Your Honor. But as to the judgment itself, Your Honor, it's correct. The judgment was entered pursuant to Rule 127. Now, I want to make sure that I'm clear on this. There are actually two issues in play here with regard to judgment, and I want to be absolutely clear on what they are. We're speaking here first and foremost about the issue of judgment under 127A and what the consequences of that are, and we submit that when a judgment is entered, it has estoppel effects. It has the estoppel effects. But doesn't the estoppel effect turn on the language of the underlying judgment order, if you will? Well, so two responses to that, Your Honor. As a general proposition, we submit no. I mean, it's in the same way, for example, in an infringement action. If a defendant prevails on a cellotex ground of non-infringement, you get a judgment of non-infringement. That doesn't mean that the plaintiff can show up a week later and say, I found the evidence. Excuse me. Sorry. In this case, could the board have issued a judgment dismissing the interference for lack of standing? Dismissing the interference because Amora lacked standing via its concession. So the mechanism, sort of the formal mechanism of dismissal is simply not in the rules. The mechanism for resolving the interference or terminating the interference is 127A, as the board correctly pointed out. Well, why couldn't the board have... No, I understand. But why couldn't the board... Could the board... Why could the board not have issued a judgment saying there's been a concession of lack of support, written description support. That means no standing. Hence, we enter judgment pursuant to 127, dismissing the interference because there's no interference because there aren't competing claims. So the nature of the judgment that can be entered under 127 is very clear. And 127A simply provides... You're saying you couldn't enter that kind of a judgment. I say it's not contemplated by the rules. So point one. Point two, just to address the standing issue for just a minute, because I think there's some issue here in the briefing I'd like to address, which is this is not an issue of, for example, constitutional Article III standing. This is clearly an issue of Article I and the board's authority to promulgate rules that set out what a party can do in the course of an interference. The standing question here that has been cast as a threshold issue is a standing issue that deprives the opponent of proceeding in the interference and challenging our evidence of priority. It is not a standing issue in the sense of constitutional ownership issues as to the right to even be in the proceeding. And that's an important point. And it's there for an important reason. The standing issues, the fact that these have been called threshold issues in the rules is to protect the party whose claims have been copied. They are asserting the standing and threshold argument as essentially a way to protect them and the estoppel consequences that flow from the fact that they precipitated this interference. They are the party that copied. The standing and threshold issues are there so that parties in their posture are not permitted to copy claims and use the interference process as a pretext for a contested opposition proceeding. I guess you fear it will just be over and over. It could amount to harassment. If there's no estoppel, then people could file this and then file another one and file another one and another one, and it would never end. And it's not speculative, Your Honor. There are currently interferences pending, as Mr. Bretschneider has alluded to. It's not speculative. This was the very thing that was flagged in the Declarer decision as the concern, the other sort of this never-ending issue. Here in this case, in this interference, they were given the opportunity to present new claims. If they thought they had something that could be joined in this interference, they were given that opportunity to do it. They didn't take it. What they're asking... You say they're given this opportunity. Is this after the admission that the claims that they had submitted were not, didn't have written description support in their own specification? Is it after that point in time when they've asked for the adverse judgment they could have submitted a new claim? Well, timing-wise, Your Honor, it was before... Maybe I'm misunderstanding Your Honor's question, but chronologically, they received our motion for lack of written description. They... At that point, their response was, we want to file a responsive motion, which is their opportunity to bring something else into play. And that's a fundamental issue from an estoppel perspective. From a policy perspective, the board's rules and this court's decision are clear that if you've got an issue, bring it in here. We've got the machinery all cranked up here. We've got APJ Medley familiar with the issues in this interference. Let's get all the issues on the table. And that's why the scope of estoppel extends beyond the reasons for a judgment and extinguishes lots of things downstream. And that was one of the bases for Deckler. So, and in this case, Your Honors, they actually had the opportunity to present a new claim. The very claim that, as I understand their request for relief here, the very claim that if this court permits their relief, they could then file with the Patent Office on an ex parte basis. The very same claim that they asked to file and could not, or I'm sorry, excuse me, did not. So they elected not to avail themselves of all of the mechanisms that the Patent Office offers in order to, as they say, bring all the issues into play. We are in this case. We, Schaefer, are in this case. My client has spent a lot of money to prepare and respond to the interference that they started. It is hardly unfair or unreasonable to say, if there are issues, let's bring them to the fore now from the perspective of judicial economy as well as fairness to my client. All of those policies are reflected in why estoppel consequences are what they are. And here the board knew, the board knew what Omura was intending to do. And so it took great pains actually in fashioning this judgment to ensure that the language of the judgment fully reflects what the estoppel provisions are. Now obviously, the words of a judgment can't capture the full scope of Deckler and Probst and Rule 1.7. But they took pains to note that this is not an issue that's limited to the very basis for the judgment. And that's a key point. Moreover, we haven't spoken much about the other sort of independent basis for affirmance in this case, which is the 127B3 issue where their admission that their claims lack written description support was correctly construed by the patent office, by the board, as a concession of unpatentability and a request for adverse judgment. This was not a stretch for the board. The language of the rule, which the board is given wide latitude to interpret and apply, is concession of priority or unpatentability of the contested subject. Let me ask you, there's this comment. It's the answer to comment 140, I guess, when this rule was being promulgated. The comment was said, one comment seeks clarification whether the estoppel in 127A applies to a party that prevails on priority but is held to have unpatentable claims. And then the answer is a party that loses on patentability from an involved claim will receive an adverse judgment, that is lose, on patentability for that claim and consequently will be estopped with regard to the patentability of the subject matter of that claim. Is that what you say is the case here? Well, it goes beyond that. Yes, in part, Your Honor, but it does go beyond that. The rulemaking history is actually clear as well that rule 127A was promulgated in order to track and really codify this court's authority in In Re Declar. So that is certainly one estoppel consequence of the adverse judgment in this decision, in this interference, but it's not the sole one. And the full scope of estoppel is, again, it is set out in the case law. So you agree that it's possible for the board to enter a judgment only on specific claims as opposed to on an entire count. Like, for example, in this case, the count corresponded to the claim. So maybe you would say, no, not in this case, Your Honor. But in another case, the count could be much broader than a very small number of claims that were brought and an admission of unpatentability of a small number of claims should not necessarily be extrapolated over. Your Honor, the best way I can answer that is I don't see the authority for the board to do that in the rules and I don't see the authority for the board to issue essentially a partial or limited estoppel effect judgment in the case law. I mean, that's one of the other points to make. Why? Rule 127A2 talks about final disposal of a claim. Adverse judgment against a claim, not a count, claim, is a final action of the office requiring no further action to dispose of the claim. Why doesn't 127 expressly authorize the board to enter judgment against particular claims and not only just always against a count? Well, I think the sentence that I focus on in responding to Your Honor's question previously was actually the first portion of 127A. As I understand it, the question being whether the board can within its authority limit the estoppel consequences of a judgment. Well, so the estoppel issue really isn't before us. The issue before us is was the board, did the board properly grant judgment as to the count or should the board only have granted judgment as to the claim? They clearly only stipulated as to the claims and so your argument as I understood it was, well, there's no authority for what they're asking for and I'm saying, I don't know, 127, I may not know it as well as you do, but it seems to clearly indicate the ability to enter judgment on a claim. So since the only issue I'm deciding isn't whether estoppel should attach or not or whether the judgment should be written as a judgment against a count or a judgment against a claim, I'm just questioning whether you're correct that 127 only authorizes the board to enter judgment on a count. That doesn't seem consistent with the language, but I want to give you an opportunity to let me know your thoughts on that. Your Honor, I don't believe this was an issue that was debated in the briefing. I think really the best answer on this is... Well, debated in the briefing, Mr. Brettschneider argues no, judgment should only have been entered on our claim, not on our claims, not on our counts and that's what you've responded to, so I think that's the issue. Well, the issue is they are clearly looking for sort of proactive narrowing of what the consequences of the judgment would be. Now, you know, here Your Honor, I will say as a matter of sort of first principle, the claim here and the count are the same, so I think this is, with regard to the facts of disinterference, an academic issue. As to 127A2, Your Honor, I believe you're correct that the language says what it says, that adverse judgment could be against a claim. You know, here it was not and here there are many, many reasons why it was not and again, just to focus on the concession portion of B3, I think this is a very important component that underpins the board's decision in this case. They correctly construed and applied their rules. I would note that in the reply briefing in this case, Omura concedes that in their position, well, first off, the concession of unpatentability here was with regard to claims that did identically recite the count. As to the statutory construction issue, Omura's position, and we disagree with this, but their position to start out with is that the board's rules don't define what the term contested subject matter means. Now, that concession in and of itself, we submit, really should be fatal on this question of whether the board properly applied 127B3 and after all, the board is given wide latitude, as this court noted in the Sullivan case, unless it's plainly erroneous or inconsistent with the regulation. Now, where they concede in their view that the rules do not define the term contested subject matter, we submit that the board was perfectly within its broad range of discretion to conclude that in this case, where they had conceded the unpatentability of claim language identical to the count, that the contested subject matter of rule 127B3 is in fact the concession of the count. Let me ask you, were you finished answering that question? Yes, Your Honor. Let me ask you, if the board had entered an order in this case identical to the order in the Chu case, that's at 1000, 1000 to 1002 of the appendix, would you say the board was in error? Yes, Your Honor, I would. And I would because the order in this case was entered after consideration and deliberation of the very issue that's before this court today. There's nothing that I'm aware of that would say that in the Chu case that the issue was even considered, let alone any discussion of what the estoppel consequences would be downstream. Well, it says... No, I'm just talking about the form of the order, again, leaving aside the downstream estoppel consequences. I mean, it appears... Obviously, we don't know, but at least I don't know about the Chu case, but it says Mukherjee's claims, etc., do not comply with the written description requirement of 35 U.S.C. 112, first paragraph. And then, based upon that determination, and we have the same situation here, an acknowledgement that they don't comply, the board entered the order that it did in Chu. Now, why would it have been error for the board to have entered the same language in an order in this case? So, two answers here. One is, there is an important distinction between this case and the Chu case, which is, as I understand the Chu case, there was a determination that the party lacked written description. Here, the board actually never reached that issue. But there was a concession. Right, and the concession actually has a very important consequence. O'Mara doesn't dispute that if the concession, in fact, occurred, that the board was perfectly correct in the way it phrased its judgment. There's no dispute on that point in their reply papers. So, that actually is, it's sort of a separate pathway to get there. I don't understand. Written description is a question of fact, right? A party can concede an issue of fact. It can't concede an issue of law, but it can concede an issue of fact. O'Mara here conceded an issue of fact. It said, we lack written description support for our claim. And the board entered judgment based on that. How is that different from what happened in Chu, where, assuming there was a determination of lack of written description, what's the difference? Well, first off, I think there's a difference in the way the rules are applied. It's sort of the, maybe the dogmatic answer to Your Honor's question. I mean, the rules actually, there is just a separate pathway provided in the rules. And, you know, the board is a creature of the rules. I don't mean that in any... But it's the same rule. But the rules actually provide for different mechanisms in the event of a concession. And so that's sort of one distinguishing point. To Your Honor's question, though, the other thing that I think is important here is I'm not aware of any sort of motion for reconsideration that actually focused the board in the Chu interference on the issue that this board was focused on. And that's why I submit that had this board, after seeing all the back-and-forth between the parties, issued a judgment that would create the appearance of being less than a full judgment under 127A, because of sort of the intrinsic evidence of the process, the deliberative process, that led to the articulation of the judgment, what I would be fearful of is that Omura, in downstream prosecution, would rely on that sort of the intrinsic evidence that underlies the phrasing of the judgment to say, well, that judgment was a partial judgment. And that's sort of the point here. That's what they're asking for, is a partial judgment. There's no basis for that in law or rule. So, at least with respect to the first part of your answer, your position would be, if you'd been advising Omura here, you would have said, don't concede lack of written description. Simply don't oppose the motion and allow a determination of lack of written description to be made against you. And then you're in the same, you're out of B3 and you're into Chu. At least if you regard Chu as being a precedent that the board would be inclined to follow. I think Chu, the issue with Chu being precedent on this point is that the very issue that they are focused on, there's nothing that I'm aware of that shows that that issue was actually,  But to your first question, Your Honor, just to be absolutely clear on what happened, what Your Honor suggests is in fact what they said they were going to do. They actually, we sought lack of written description support on three bases and they said they were not going to oppose, but instead what they did was they conceded one and then argued opposition of two. What they did in this case, Your Honor, is actually very clear. They were afraid that the board would actually reach the merits of our written description motion and conclude that their written description lacked not one, but three bases. And so in fact what they did was a calculated decision to avoid a broader estoppel effect, namely an issue preclusion consequence. We've been talking about claim preclusion here more and that's what they set out to do. And so as a consequence, again, on this record, the board was certainly against all of this background well within its discretion to frame the judgment as broadly as it did. Very well. Thank you, Your Honor. Thank you. We'll give Mr. Brett Schneider a couple of extra minutes for rebuttal. Thank you, Your Honor. A couple of things. First of all, I think Schaefer's argument points out our concern. I think underlying Schaefer's argument is their belief that the judgment is a judgment as to priority. I think when you listen to the oral argument again or read a transcript, you'll see this. Just a couple of small points. Number one. You mean the transcript of this argument or the transcript of the argument below? No, the transcript of this argument. Oh, well, we were all here. Oh, I knew. But I'm just... I don't know. I guess I'm so keyed up. We heard the argument. I'm sorry. Okay. A couple of things. First of all, there's nothing in Rule 127 that prescribes the form of judgment. So saying that, as the board seems to have said and as Schaefer seems to argue, that Rule 127A requires entry of judgment as to the count is simply untrue. I think Judge Moore raised this point. Another thing is a better example of the kind of judgment that should have been entered is actually A1003 to 1004 and 06 to 07. Those are even clearer than the Mukherjee, Chu v. Mukherjee case. Another thing is that Schaefer's position, especially as argued right at the end by Mr. Glitzenstein, would encourage lack of candor. What Omura did here is face the Schaefer's Motion 1. Schaefer's right. Why should we waste the time of the board and Schaefer in dealing with this issue? If we had simply not opposed, what would the board have done? The board would have said, you didn't oppose this motion. That's tantamount to whatever happened in this case. So it's kind of immaterial, and it also encourages waste of administrative time. One final point. Why didn't Schaefer object to this judgment? And the reason Schaefer didn't object is that Schaefer received a windfall. As we argued in our opening brief and our reply brief, Schaefer, in effect, got more than they asked for. They asked for judgment on Motion 1. Judgment on Motion 1 would have found that Omura lacked standing and would have resulted in the same judgment as was issued in the Adang case, which is A1003 to 1004. There would have been no judgment as to the count. Lack of standing just goes to a judgment as to the particular claims in issue and nothing else. And that's what we respectfully suggest. Also, the notion that this court should tell the board to give a partial judgment is really kind of silly. First of all, the Administrative Procedure Act gives a reviewing court the right to correct administrative decisions, number one. And number two, all Omura is asking for is the judgment that should have been rendered. And it's not a partial judgment. It's a full judgment under the circumstances of the case. Thank you. Thank you. We thank both counsel. The case is submitted.